IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MORGANS GROUP LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:19-cv-02809 |
| § | |
| 5104 CAROLINE, L.L.C., § | |
| OX CAROLINE CONDOS, L.L.C., § | |
| OXBERRY GENERAL, L.L.C., § | |
| OXBERRY FINANCIALS, LTD., § | |
| PEJMAN JAMEA, SHAHIN JAMEA, and § | |
| DOCUMENTED TRANSACTIONS, INC., § | |
| § | |
| Defendants. § | |
| § | |

## MORGANS GROUP LLC'S MOTION FOR SANCTIONS

**1.     SUMMARY OF MOTION**

Defendants' new counsel in this matter—the third law firm to represent them in this dispute—recently stated we are "starting over" with document production in this dispute. This case has been pending for almost a year and a half; yet we are now "starting over" with document production and review. The repeated tactics of delay and obfuscation employed by Defendants to date have frustrated Plaintiff and cost it tens of thousands of dollars in legal fees reviewing a now defunct document production, pointing out to Defendants their many discovery failures, and filing motions. Defendants' tactics have also tested "[t]he court's patience." (Order on Discovery, ECF No. 43).

While federal litigation is, by its nature, adversarial, the parties' counsel must necessarily cooperate in critical ways in order to advance the litigation, as mandated by the Federal Rules of Civil Procedure. Chief among that cooperation is in the discovery process, where parties are to

make the full and timely disclosure of information in their possession that is relevant to the claims and defenses in the action. *See, e.g.,* Fed. R. Civ. P. 37.

Here, Defendants have wholly failed to comply with their discovery obligations under the Federal Rules of Civil Procedure. They have failed to comply with an order of this Court on Plaintiff's motion to compel. The Fifth Circuit Court of Appeals has condemned "Rambo tactics" in discovery, noting that "[c]ounsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests." *McLeod, Alexander, Powel & Apffel, P.C., v. Quarles,* 894 F.2d 1482, 1485-86 (5th Cir. 1990) (affirming district court's striking of defendant's pleadings and entering default judgment in favor of plaintiffs for discovery abuses subject to sanction under Fed. R. Civ. P. 37). This motion seeks to sanction Defendants for their knowing and improper discovery conduct and violations of this Court's orders by (i) compensating Plaintiff for the fees it expended in reviewing Defendants' now-defunct document production and in moving to compel an appropriate discovery response from Defendants; and (ii) a default judgment on liability.

**2.     RELEVANT FACTUAL BACKGROUND**

    **A.     Defendants' July 2, 2020 Production**

On July 2, 2020, Defendants mailed a production of 32,904 documents totaling 113,103 pages (the "July 2 Production"). At the time and at every point before November 8, 2020, Defendants maintained that the production included "all electronic data" and that "Defendants are not aware of any other documents/data to produce." (ECF No. 38 at 4). Defendants repeatedly claimed the production comprised all responsive documents despite multiple conversations and letters in which Plaintiff's counsel raised serious doubts about the accuracy of Defendants' claims.

Plaintiff voiced concerns with Defendants' discovery conduct and representations about their documents even before the July 2 Production. For instance, on April 29, 2020, Plaintiffs

2

wrote Defendants counsel stating, among other things, that their claim that all relevant and responsive electronic documents were "stored on a single computer at Defendants' place of business strains credulity." (Exhibit 1 at 1). Subsequently, Defendants represented in a status report to this Court that they would produce their documents by May 29, 2020 (Dkt. No. 32 at 3). Document were produced just over a month later on July 2.

Defendants' July 2 Production, however, was facially defective. Upon receiving the production, Plaintiff's counsel devoted substantial time and resources reviewing the production to ascertain its completeness and content. The review revealed that the July 2 Production was deficient. First, it included only documents for whom Shahin Jamea – one of the seven defendants in this action – is custodian. Moreover, the July 2 Production was a "document dump" of clearly irrelevant materials having nothing to do with the subject matter of this action whatsoever.

B. **Plaintiff's Motion to Compel**

Plaintiff's counsel repeatedly raised the question of the completeness of the July 2 Production with Defendants' counsel. At every turn, however, Defendants' counsel maintained the production was complete notwithstanding the obvious deficiencies.

Indeed, on August 21, 2020 in response to a deficiency letter from Plaintiff's counsel, Defendants' counsel again asserted that "all documents/data was produced. . . . and there are no further documents in [Defendants'] possession, custody, or control." (Exhibit 2). On September 2, 2020, Plaintiff's counsel met and conferred with Defendants' counsel, again raising their repeated concerns with the completeness of the July 2 Production. Following the conclusion of that September 2nd meet and confer, Plaintiff's counsel e-mailed Defendants' counsel to reiterate those concerns with the July 2 Production and to propose questions to be asked of Defendants to ascertain the completeness of the July 2 Production. (Exhibit 3 at 2). In response to that email,

3

on September 4, 2020, Defendants' counsel indicated that he "spoke to Defendants regarding the items/issues presented on the call, in your email, and the relief request for the motion to compel. Defendants oppose the relief requested." (Exhibit 3 at 1.)

The parties' meet and confer concerning the deficiencies in Defendants' productions culminated in a motion to compel by Plaintiff against Defendants, which this Court granted in full on October 9, 2020. (ECF No. 43) (the "Discovery Order"). In addition to Plaintiff's complaints about Defendants' document dump and failure to respond to Interrogatory No. 1, Plaintiff again expressed skepticism that Defendants had produced all responsive documents. (ECF No. 40 at 6, FN1). Defendants opposed that motion, and claimed they had "done their best to comply with the discovery obligations, respond to Plaintiff's discovery requests, and produce documents all in good faith and consistent with the requirements of the Federal Rules of Civil Procedure". (ECF No. 41 at 2). In addressing Plaintiff's doubts concerning the completeness of Defendants' document production, Defendants echoed their prior representation that they were "not aware of any further documents/data to produce." (ECF No. 41 at 4).

It was not until the Court granted Plaintiff's Motion to Compel (itself months after Plaintiff's first inquiries regarding the completeness of Defendants' production and long after the agreed production deadline set forth in the Court's Management Order, ECF No. 39), that Defendants began to address Plaintiff's concerns and to appear to take this Court's orders seriously. In doing so, Defendants identified many multiples of more data than had previously been reviewed and produced – all without communicating with Plaintiff *at all* concerning it until the last business day for compliance with the Discovery Order.

### C. Defendants Did Not Comply with the Court's Discovery Order.

The Court's Discovery Order, which granted the Motion to Compel, required Defendants to "review all documents produced, segregate into relevant and irrelevant groups, and furnish those groupings to Morgans Group LLC" by November 1, 2020. On or around October 27, Defendants' counsel for the first time informally reached out to Plaintiff's counsel regarding the possibility of an extension of its time of undefined length to comply with the Court's November 1 deadline. On October 30—the last business day before the November 1 compliance deadline and three weeks after the Court's Discovery Order—Defendants' counsel emailed requesting a meet and confer on its anticipated motion to seek an extension of its time to comply with the Discovery Order because "[m]y client cannot complete this project by Sunday and needs to move for an extension of time of ten days." (Exhibit 4). In the same email, Defendants' counsel first describes new data to be produced:

> The client had many issues with the original vendor who did the search and moved on from that vendor. The client hired another vendor to work on the project. The Project is significant (over 30,000 items) and has **doubled in size due to a new vendor searching additional source of information** (using the agreed upon search terms and ESI protocols).

(*Id.*) (emphasis added).

Prior to that Friday afternoon e-mail, Defendants' counsel had not so much as uttered that it had determined that its production was deficient, as Plaintiff had repeatedly indicated for months, let alone that it had identified "new sources of information" and that the production had "doubled in size."

### D. The Extension Motion

On November 1, 2020—the deadline for Defendants' compliance with the Discovery Order—Defendants filed an opposed motion for extension of time to comply with the Discovery Order.

5

(ECF No. 44) (the "Extension Motion"). In the Extension Motion, Defendants recited a history of purported efforts to recollect documents that allegedly resulted in the identification of 235,933 records that contain the search terms agreed upon by the parties. (*Id.* at 3). Nowhere in the Extension Motion do Defendants explain the timing of their efforts or indicate why Plaintiff was not informed of the additional documents at the time they were identified.[1]

In the Extension Motion, Defendants revealed the true extent of the deficiencies in their discovery efforts. Despite their flat denials of any deficiencies in each and every interaction with Plaintiff's counsel for many months, Defendants recite in the Extension Motion that they "took the allegations seriously and presented these alleged deficiencies to the e-discovery company." The Extension Motion attempts to improperly deflect responsibility for discovery from Defendants and their counsel to an eDiscovery company. But an eDiscovery company cannot know all locations where responsive information may be located. Those responsibilities rest squarely with the Defendants and their counsel, and Defendants know as much.

The Extension Motion was accompanied by an un-notarized "affidavit" of Shahin Jamea, an individual defendant and "the corporate representative for Defendants [who has] managed this litigation." Mr. Jamea is a licensed Texas attorney admitted to practice before this Court.[2] Mr. Jamea's "affidavit" recites that he "was advised by my counsel of the process, requirements, and protocols [of eDiscovery] but I still did not fully realize the extent of the process and requirements nor the size of the emails and attachments which would be returned by doing the agreed upon

---

[1] Indeed, as described here, Defendants latest production did not "segregate" their previously produced documents as required by the Discovery Order, but rather re-produced them all bearing new Bates numbers, which is itself inconsistent with the requirements of the Discovery Order.

[2] Mr. Jamea's self-reported Courts of Admittance to the State Bar of Texas (last updated June 15, 2020) indicate admission to "Texas Southern District/Bankruptcy Court." *See* "Find a Lawyer" at https://www.texasbar.com. This Court's Attorney Admission Status website (https://ecf.txsd.uscourts.gov/AttorneyStatusPublicWebsite) indicates that Mr. Jamea (Bar No. 24034502) was admitted to practice before this Court on August 9, 2002 and his bar status is currently "Membership Expired".

search terms." The affidavit then proceeds to malign the eDiscovery company and place blame at their feet for their alleged non-responsiveness to Plaintiff's concerns with the production – concerns that had been raised *months* prior, including in a Motion to Compel with this Court.

Aside from manufacturing excuses for Defendants' discovery abuses, the Extension Motion reveals that the size of Defendants' latest collection of case documents is considerably more than just "double" the size of its prior production as Defendants' counsel represented just two days prior. The Extension Motion claims that a new vendor performed searches and located 235,933 records (inclusive of family members) containing the parties' agreed-upon search terms for defendants' ESI from a collection that exceeded 1.3 million pages. By contrast, the July 2 Production was 32,904 records or roughly *one-eighth* the size of the forthcoming production referred to in the Extension Motion.

Based on the three persons purportedly working on Defendants' behalf to review documents (Mr. Jamea, his brother, Pejman Jamea, and Defendants' counsel, Mr. Beik), Defendants "estimated that 100-200 images [pages] can be reviewed per person, per hour," (ECF No. 44 at 6), requiring *at least* 6,657 man-hours to complete review – or roughly 90 days of *non-stop, 24 hour per day* review for the three-person team. Defendants, however, had requested a ten-day extension of their time to comply with the Discovery Order, which would indicate either that Defendants commenced this review much earlier than they informed Plaintiff or the Court of their discovery deficiencies, or Defendants' review estimate was unrelated to the facts of the review.

E. **Defendants' November 10 Production**

On November 3, 2020, this Court denied the Extension Motion before Plaintiff's opposition was submitted. (ECF No. 45). On November 6, 2020, John Zavitsanos, Patrick

7

Yarborough and Kyril Talanov of Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C. filed a Notice of Appearance on behalf of Defendants. (ECF No. 46).

On November 10, 2020, Plaintiff's counsel had a conference call with Defendants' latest counsel to discuss Defendants' forthcoming document production. On the call, it was revealed the Defendants would be making a production that evening of all of the documents that were identified by the new eDiscovery vendor's searches, segregated into responsive and non-responsive sets. Indeed, one of Defendants' new lawyers asserted that he had personally reviewed the responsive documents from this set (later revealed to be 54,795 such documents totaling 240,298 pages) in the course of a weekend – a break-neck, *non-stop* pace of 1,141 documents per hour or 5,006 pages per hour, if true.

Defendants' counsel also admitted on the November 10, 2020 call that the parties were effectively "starting over" with document discovery with Defendants' production, underscoring that Plaintiff's time and energy on Defendants' productions to that point had been worthless. Plaintiff also raised its motion for sanctions on that call, which, predictably, Defendants opposed.

On the evening of November 10, 2020, Defendants made a sizable production of documents, segregated into two sets – responsive and non-responsive. The responsive set contains nearly *eight times* as many documents as the July 2 Production (which was a "document dump" of responsive and non-responsive material). The non-responsive set contained an additional 111,287 documents, which Defendants did not image (so no ready page count is available).[3] Of note, Defendants re-Bates stamped all documents in a different Bates range, preventing any easy association between Defendants' July 2 Production and its November 10 Production. This

---

[3] Defendants' own review confirms that the parties' agreed-upon search terms were effective at identifying responsive information with a yield of approximately 33%.

decision is likely a result of Defendants' retention of a new vendor, who reprocessed data, which prevents any meaningful technical "matching" of the two productions, only further underscoring that Plaintiff must "start over" with Defendants' productions, only further underscoring the appropriateness of granting Plaintiff's expenses with regard to the July 2 Production as sanctions against Defendants here.

**3.     ARGUMENT**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, a court may impose sanctions against a party where it has failed to obey a discovery order. Likewise, under Rule 16(f), a court may sanction a party if a party or its attorney "fails to obey a scheduling order or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Rule 37 provides that a court "may issue further just orders" and enumerates several potential sanctions the court is authorized to impose, namely,

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A) (i)-(vii).

Rule 37 further provides that "[i]nstead of **or in addition to** the orders above, **the court must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37 (b)(2)(C) (emphasis added); *see also* Fed. R. Civ P. 16(f)(2) ("Instead of or in addition to any other sanction,

9

**the court must** order the party, its attorney, or both to pay the reasonable expenses—including attorneys' fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust") (emphasis added). A district court has broad discretion when fashioning sanctions. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012).

To obtain sanctions under Rule 37(b), a party is required to show that a court order has been disobeyed. *Carr v. Texas Alcoholic Beverage Comm'n*, No. CV H-07-3665, 2009 WL 10694923, at *1 (S.D. Tex. Jan. 13, 2009). Furthermore, the Fifth Circuit Court of Appeals has developed a four-factor test to determine whether imposing sanctions for failing to make an evidentiary disclosure is appropriate in a case. These factors are: "(1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *MCA The law Funder, LLC v. Munoz*, No. 7:14-CV-00981, 2016 US Dist LEXIS 187374, at *4 (S.D. Tex. Dec. 9, 2016) (citing *United States v. Garza*, 448 F.3d 294, 299-300 (5th Cir. 2006). With respect to the second factor, one court explained that "prejudice to the opposing party—weighs in favor of imposing sanctions" where "Defendants' violation directly prolongs litigation, increases litigation-related expenses, and prevents Plaintiff from effectively prosecuting its case." *MCA The Law Funder, LLC v. Munoz*, 2016 U.S. Dist. LEXIS 187374, *6 (S.D. Tex. December 9, 2016). Furthermore, the third factor, "feasibility of curing such prejudice with a continuance of the trial" also heavily weighs in favor of the imposition of sanctions where, "continuances would only further prolong litigation and increase Plaintiff's litigation expenses." *Id*.

Here, Plaintiff meets the four-factor test warranting the imposition of sanctions because (1) Defendants' reasons for failing to comply with their discovery obligations and failing to obey this

10

Court's Discovery Order, provided in the Extension Motion—that they did not have a "realistic idea" of their discovery obligations, "despite advice of counsel" and that they had recently had problems with the eDiscovery company they hired to assist them—do not justify Defendants' failure; (2) the prejudice to Plaintiff weighs in favor of imposing sanctions because Defendants' violations have directly prolonged litigation, increased litigation-related expenses, and prevented Plaintiff from effectively prosecuting this case (*see MCA The Law Funder, LLC*, 2016 U.S. Dist. LEXIS 187374, at *6); (3) it is not feasible to cure the prejudice with a continuance because "continuances would only further prolong litigation and increase Plaintiff's litigation expenses." *Id.*; and (4) there are no "other relevant circumstances" that weigh against sanctions in this case.

For these reasons, and the additional reasons detailed below, it is respectfully submitted that sanctions are warranted in light of Defendants' continued willful disobedience of this Court's Discovery Order, bad faith delay of discovery in this matter, and utter refusal to take the discovery process seriously up until now. At a minimum, Defendants should be required to pay for the attorneys' fees and costs incurred by Plaintiff in trying to get Defendants to comply with their discovery obligations. The Court should also impose the more severe sanction of rendering a default judgment against Defendants on liability in addition to granting Plaintiff attorney's fees and costs.

### A. This Court Should Grant Plaintiff's Attorney's Fees and Expenses in Light of Defendants' Clear Disobedience of the Discovery Order.

There is no question that Defendants have violated this Court's Discovery Order. Indeed, their belated Extension Motion and the Court's quick denial of that motion establishes that the Court's order has been disobeyed, and that sanctions pursuant to Rule 37 (b) are appropriate in this case. Fed. R. Civ. P. 37 (b)(2)(C) authorizes a court to grant sanctions in the form of reasonable expenses and attorney's fees "instead of or in addition to" a more severe sanction such as default.

Furthermore, Rule 37 provides that such sanctions may be imposed against the "disobedient party" or "the attorney advising that party, or both". *Id*. A party may avoid such sanctions only where the failure was "substantially justified or other circumstances make an award of expenses unjust." *Id*.

Courts have noted that Rule 37 "**requires** the Court to 'order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure . . . .'" *MCA The Law Funder, LLC v. Munoz*, 2016 U.S. Dist. LEXIS 187374, *9 (S.D. Tex. December 9, 2016) *vacated in part on other grounds* 924 F.3d 753, 758-59 (5th Cir. 2019) (emphasis added). Courts will grant a moving party reasonable attorney's fees and costs "unnecessarily incurred as a result of [the disobedient party's] delay." *Id*. Moreover, "lesser sanctions" such as attorney's fees and expenses "do not require a finding of willfulness." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (citing *Chilcutt v. United States,* 4 F.3d 1313, 1323 n. 23 (5th Cir.1993) (stating that district courts "have authority to grant a broad spectrum of sanctions" under Rule 37(b), and "neither this Court nor the Supreme Court has ever determined that the lack of willful, contumacious, or prolonged misconduct prohibits all sanctions")). [4]

Defendants' violation of the Discovery Order was knowing. Indeed, Defendants waited until the afternoon of the last business day to fully approach Plaintiff regarding their inability to comply with the Discovery Order, which was allegedly borne out of the discovery that their productions had been deficient (as Plaintiff had suspected and inquired all along). While

---

[4] Indeed, courts have imposed sanctions even where the violation of a discovery order was considered to be inadvertent. *See Smith & Fuller, P.A.*, 685 F.3d at 488-489 (holding that "[t]he extra time and effort exerted on this matter could have been avoided had the Appellants been more careful in the handling of Cooper's confidential materials. The Protective Order was granted specifically to protect Cooper's trade secrets and confidential information from incidents such as this."). Here, Defendants' violation of the Discovery order was far from inadvertent.

Defendants did eventually make a production on November 10, 2020, the production only underscores the fact that Plaintiff's efforts to date on Defendants' document production have been wasted. Rather than segregate its prior production into responsive and non-responsive documents, as required by the Discovery Order, Defendants re-produced the documents, *together with thousands of other documents*, under new Bates stamps, making it virtually impossible to align the July 2 Production (and Plaintiff's work product regarding it) to Defendants' November 10 Production. Indeed, Defendants' counsel readily admitted that the parties were "starting over" with Defendants' production.

Rule 37 provides this Court ample authority to award Plaintiff its fees and expenses in bringing the Motion to Compel, in reviewing the July 2 Production in connection with its meet and confers with Defendants and the eventual Motion to Compel, and in bringing the instant motion.[5] Those expenses are $30,286.51, all of which should be borne by Defendants in this litigation. *See* Finguerra-DuCharme Decl. ¶¶ 3-5. Defendants' willful actions in defiance of their discovery obligations should not be the burden of Plaintiff. Indeed, Defendants' corporate representative admitted in an unsworn affidavit that he managed the discovery process and, in doing so failed to honor their Discovery obligations, *despite* advice of counsel. An award of Plaintiff's fees in the amount of $30,286.51 is justified for Defendants' failure to comply with the Discovery Order.

### B. This Court Should Render a Default Judgment Against Defendant for Their Willful and Bad Faith Disobedience of the Court's Discovery Order

Courts have explained that, "the severest of remedies under Rule 37(b)—e.g., striking pleadings, entering default judgment, or dismissing the action with prejudice" are warranted where a party's violation of a discovery order was found to have been committed willfully or in bad faith."

---

[5] Should the Court grant Plaintiff's request for its attorneys' fees in bringing the instant motion, Plaintiff will submit a certification of such expenses upon the Court's request.

*Lincoln Gen. Ins. Co. v. Maxwell*, No. 3:16-CV-03198-B, 2018 U.S. Dist. LEXIS 165559, at *5-6 (N.D. Tex. Sep. 26, 2018) (granting plaintiff's motion for sanctions under Fed R. Civ. P. 37 (b) striking defendant's answer in addition to attorney's fees and costs where defendant was deemed to have engaged in "abusive and dilatory conduct" in discovery).

The Fifth Circuit Court of Appeals has explained that in the case of "litigation-ending sanctions" such as dismissal or default, the district court must make four additional findings. *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758-59 (5th Cir. 2019). These are: "(1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation 'substantially prejudice[d] the opposing party'; and (4) a lesser sanction would not 'substantially achieve the desired deterrent effect.'" *Id*. (affirming entry of default where the court had imposed sanctions in the form of striking defendant's answer and granted attorney's fees and costs to plaintiff under Fed R. Civ. P. 37 (b)) (citing *FDIC v. Conner*, 20 F.3d 1376, 1380-81 (5th Cir. 1994)).

Furthermore, "[d]eliberate, repeated refusals to comply with discovery orders have been held to justify the use of this ultimate sanction." *Bonaventure v. Butler*, 593 F2d 625, 626 (5th Cir. 1979) (affirming dismissal of plaintiff's case for his failure to comply with the court's discovery order); *See also Plasticsource Workers Comm. v. Coburn*, 283 Fed. Appx. 181, 185 (5th Cir. Tex. February 1, 2008) (affirming the district court's grant of default as sanctions against defendant where he "willfully violated the district court's order by leaving the deposition ... after only two hours of questioning in a deposition that was scheduled to last 12 hours. … 'In making its 'bad faith' determination, the district court was entitled to rely on its complete understanding of the parties' motivations.'… In this case, [defendant] had previously refused to comply with both written discovery demands and the district court's orders regarding his deposition. [Defendant]'s

14

prior dilatory and obstructive conduct was well documented and the extreme sanction of default judgment was warranted by his actions.")

Here, Defendants' corporate representative--a member of the bar of this Court—controlled the conduct of Defendants' discovery despite the advice of counsel. Defendants ignored Plaintiff's repeated, detailed inquiries regarding the completeness of Defendants' July 2 Production and, indeed, defended their actions in an opposition brief with this Court on October 1, 2020 (ECF No. 41). Then, apparently, at some unspecified time prior to October 30, 2020, Defendants realized their July 2 Production was, indeed, deficient. They did not, however, communicate with Plaintiff or the Court about it; rather, they waited silently until the afternoon of the last business day for complying with the Discovery Order to announce that they had located multiples more documents than had previously been produced, all coming *a month* after the Court-ordered deadline for substantial completion of document discovery.

In their Extension Motion, Defendants attempt to throw their prior eDiscovery vendor under the bus, blaming it for failing to conduct searches. But, eDiscovery vendors work at the direction of client and counsel – they do not independently rove data without input and instruction from the persons on whom the discovery obligations in this action fall – the parties and their counsel. Mr. Pejman is a Texas-barred attorney and represents himself as a member of the Bar of this Court. Defendants were represented by counsel in this action. There is no excuse for the conduct by Defendants in this action aside from their intentional ignorance of their obligations, particularly where, on September 2, 2020 and despite having no obligation to do so, Plaintiff's counsel provided Defendants' counsel questions tailored to ascertain the completeness of Defendants' production –

1. Are there any non-email sources of electronic data that were not searched/reviewed in connection with the discovery requests? This would include, for example:

       a. Cloud storage (e.g., box.com, DropBox, Google Drive, etc.)
       b. Messages/communication platforms (e.g., SMS/iMessage, Slack, etc.)
2. Are there any responsive hard copy documents that have not been reviewed and produced?
3. Do the defendants have applications or databases in connection with their businesses that may contain relevant information? For example, Quickbooks/other accounting software.
4. Have all relevant mailboxes been searche[d] in connection with responding to the discover[y] requests? This would include:
       a. Any alternate mailboxes used by any document custodian;
       b. Any mailbox used by Pejman Shahin (none have been produced to date in Defendants' document production).
5. Do the Defendants employ others over whom they have possession, custody or control of responsive documents? For example, accountants or other service providers in connection with the condo?

(Exhibit 3 at 2).

      In response to those questions, Defendants refused the relief sought in the Motion to Compel and defended their conduct in their opposition thereto. The belated apologies and blame-shifting by Mr. Jamea in the Extension Motion ring hollow and should be rejected by this Court. Plaintiff submits that entry of a default judgment on liability is an appropriate remedy for Defendants' violation of the Discovery Order and its discovery obligations in this action. The entry of a default judgment on liability will substantially streamline the action and mitigate any delay on account of Defendants' late (and large) production by focusing the parties' efforts (in document discovery and depositions) on the question of damages.

      Sanctions under Rule 37 serve a dual purpose – they are meant to punish transgressions by parties in violations of their obligations, but also to deter others from the same in the future. Here, the record indicates that Plaintiff's counsel repeatedly consulted Defendants' counsel *on the very issues* giving rise to Defendants' belated discovery of additional documents, all to no productive response. The discovery process under the Federal Rules of Civil Procedure should be interactive and cooperative, and Defendants' steadfast refusal to treat it as such is sufficient to warrant a

16

default judgment on liability, both to sanction Defendants, but also to deter others from similar transgressions in the future.

**4.     CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court exercise its authority to sanction Defendants pursuant to Fed. R. Civ. P. 16(f) or 37(b) to (i) require Defendants to pay Plaintiff's reasonable expenses, including attorney's fees, in connection with its Motion to Compel, pursuant to Fed. R. Civ. P. 16(f)(2) or 37 (b)(2)(C), totaling $30,286.51; (ii) render a default judgment on liability against Defendants pursuant to Fed. R. Civ. P. 37(b)(2)(A); (iii) require Defendants to pay Plaintiff's fees and expenses in bringing this Motion; and/or (iv) for all such other and further relief as the Court deems just and proper

Dated: November 18, 2020

                Respectfully submitted,

         By: /s/ Thomas J. Adair
            Thomas J. Adair
            Attorney-in-charge
            Texas Bar No. 24047753
            S.D. Texas No. 1096168
            ADAIR LAW GROUP, PLLC
            1001 14th Street, Suite 112
            Plano, Texas 75074
            Telephone: (512) 431-2736
            Facsimile: (972) 439-9018
            tom@adairlaw.com

            Dyan Finguerra-DuCharme
            (admitted *pro hac vice*)
            Marion R. Harris
            (admitted *pro hac vice*)
            Ryan S. Klarberg
            (admitted *pro hac vice*)
            PRYOR CASHMAN LLP
            7 Times Square
            New York, New York 10036
            Telephone: (212) 421-4100

Fax: (212) 798-6928
dfinguerra@pryorcashman.com
mharris@pryorcashman.com
rklarberg@pryorcashman.com

*Attorneys for Plaintiff*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), on November 10, 2020, counsel for Plaintiff conferred with counsel for Defendants by phone regarding the relief requested in this motion. Defendants' counsel responded that Defendants are opposed to this motion and the relief requested.

                                                */s/ Thomas J. Adair*
                                                Thomas J. Adair

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Motion for Sanctions has been served on counsel of record in this case via electronic notice (CM/ECF) on November 18, 2020.

By: /s/ Thomas J. Adair